KRISTEN CLARKE, Assistant Attorney General
 KAREN WOODARD, Chief
VALERIE L. MEYER, Deputy Chief
ALICIA D. JOHNSON, Senior Trial Attorney (DCRN 494032)
SHARION SCOTT, Trial Attorney (DCRN 1617438)
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
150 M Street, N.E., 9th Floor
Washington, DC 20530
Tel: (202) 532-5872
Alicia.Johnson@usdoj.gov
Sharion.Scott@usdoj.gov

PHILLIP A. TALBERT
United States Attorney
ROBERT A. FUENTES
Assistant United States Attorney
Eastern District of California
2500 Tulare Street, Suite 4401
Fresno, CA  93721
Tel: (559) 497-4000
Robert.Fuentes@usdoj.gov


Attorneys for Applicant United States of America

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Applicant,<br><br>       v.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS AND REHABILITATION<br>    Defendant. | CASE NO.<br><br>**COMPLAINT IN APPLICATION FOR PRELIMINARY RELIEF PURSUANT TO 42 U.S.C. § 2000e-5(f)(2)** |

1. Applicant United States of America brings this action pursuant to Section 706(f)(2) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(2) ("Title VII"), and Rule 65 of the Federal Rules of Civil Procedure, against the California Department of Corrections and Rehabilitation ("CDCR") to seek an order of preliminary relief addressing allegations of employment discrimination on the basis of religion.

2. The United States seeks to (1) enjoin CDCR from enforcing its policies prohibiting facial hair (hereinafter known as the "clean-shaven policy") on peace officers ("officers") whose sincerely held religious beliefs require them to wear beards; and (2) order CDCR to engage in good faith interactive processes with CDCR peace officers Mubashar Ali, Ravinder Dhaliwal, Jatinder Dhillon, Amarpreet Pannu, Adam Quattrone, Rajdeep Singh, Satvir Singh, and Manroop Sohal ("Charging Parties"), and any similarly situated peace officers, to determine the availability of alternative accommodations that would eliminate the conflict between the officers' religious beliefs and the clean-shaven policy.

## JURISDICTION

3. The Court has jurisdiction over this action under Section 706(f)(2) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(2).

4. The United States, through the Attorney General, is specifically authorized to seek preliminary relief whenever a charge is filed with the U.S. Equal Employment Opportunity Commission (EEOC), and "the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes" of the statute "in a case involving a government, governmental agency, or political subdivision[.]" 42 U.S.C. § 2000e5(f)(2). Section 706(f)(2) further specifies that "[a]ny temporary restraining order or other order granting preliminary or temporary relief" under this provision "shall be issued in accordance with Rule 65 of the Federal Rules of Civil Procedure" and it "shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited." *Id.*

5. The EEOC received timely charges alleging, *inter alia*, discrimination based on religion in violation of Title VII from the Charging Parties, all of whom are or were employed by CDCR as

2

peace officers, including: Mubashar Ali (EEOC Charge No. 550-2023-02802 filed August 31, 2023), Ravinder Dhaliwal (EEOC Charge No. 550-2023-02873 filed July 21, 2023), Jatinder Dhillon (EEOC Charge No. 550-2023-02903 filed July 21, 2023), Amarpreet Pannu (EEOC Charge No. 550-2023-02860 filed July 21, 2023), Adam Quattrone (EEOC Charge No. 485-2023-00280 filed May 4, 2023), Rajdeep Singh (EEOC Charge No. 550-2023-02867 filed July 21, 2023), Satvir Singh (EEOC Charge No. 550-2023-02953 filed August 2, 2023), and Manroop Singh Sohal (EEOC Charge No. 550-2023-03410 filed September 26, 2023).

6.    Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC continues to investigate these charges, and, on February 6, 2024, the EEOC notified the Attorney General, through his designated delegates, of its conclusion that "prompt judicial action" is necessary under Section 706(f)(2) pending the EEOC's final determination on the merits of the charges.

7.    On March 11, 2024, the United States notified CDCR of the EEOC's February 6, 2024, transmittal of the eight charges. The United States requested that CDCR immediately cease enforcement of its clean-shaven policy against peace officers whose sincerely held religious beliefs require them to wear a beard until the EEOC has completed its investigation and issued final dispositions of the above-mentioned charges or until CDCR has demonstrated that it has adequately engaged in the interactive process. The correspondence also advised CDCR that if it did not voluntarily cease further enforcement of its clean-shaven policy and comply with its obligations under Title VII by March 21, 2024, the United States would seek preliminary relief in this Court.

8.    On March 21, 2024, CDCR declined to comply with the United States' request, taking the position that it had adequately engaged in the interactive process.

9.    All conditions precedent to seeking preliminary relief have been satisfied.

## **VENUE**

10.    Venue lies in this Court under 28 U.S.C. § 2000e-5(f)(3) because the actions giving rise to this Complaint took place in this District.

## **PARTIES**

11.    The Attorney General, through his designated delegates, is responsible for enforcing Title VII on

3

behalf of the United States against state governments, governmental agencies, and political subdivisions, and is expressly authorized to bring this action under Section 706(f)(2) of Title VII, 42 U.S.C. § 2000e-5(f)(2).

12. The United States has an interest in the enforcement of Title VII to protect the rights of state government employees to be free from religious discrimination, and to ensure that religious accommodations are not denied without a proper showing of undue hardship.

13. CDCR is a governmental agency created pursuant to the laws of California and is located within this judicial district.

14. CDCR employs approximately 26,000 correctional peace officers statewide.

## STATEMENT OF FACTS

**Respiratory Protection in the Workplace**

15. California Occupational Safety and Health Administration ("Cal/OSHA") regulations require certain employers, including correctional facilities, to protect employees from exposure to hazards in the workplace, including from aerosol transmissible diseases or noxious gases and fumes.

16. Respirators, which protect the wearer from inhaling hazards such as gases, chemicals, aerosol-transmissible diseases, or other airborne substances, can function in a variety of ways and may offer different levels of protection from contaminants. N-95 masks are particulate respirators that filter out airborne particles. "Gas mask" respirators, including Powered Air Purifying Respirators (PAPRs), also filter out chemicals and gases. Both N-95s and gas masks (including PAPRs) are in the category of air-purifying respirators. N-95s and some styles of gas masks are tight-fitting respirators, while other respirators, like PAPRs, fit loosely.

17. Under Section 5144 of the Cal/OSHA regulations, employers must develop and implement a written respiratory protection program ("RPP") when an employer determines that respirators are needed in a specific worksite "to protect the health of employee[s]." Cal. Code Regs. tit. 8, § 5144(c)(1), Respiratory Protection. Employers, not Cal/OSHA, are solely responsible for evaluating respiratory hazards in the workplace, designating which workplace locations or assignments, if any, require respirator usage, and selecting and furnishing respirators. *Id.*

4

18. Section 5144 also permits employers to select which respirators, if any, to use in the workplace and requires that respirators be certified by the National Institute for Occupational Safety and Health ("NIOSH"). Cal. Code Regs. tit. 8, § 5144(d).

19. Under Section 5199 of the Cal/OSHA regulations, which relates specifically to protection from exposure to disease transmitted by aerosols or droplets, correctional facilities must conduct a workplace exposure assessment, have written safety plans, provide protective equipment, as needed, and train employees on safety procedures.

20. The Cal/OSHA regulations do not require employers to select or use a specific respirator.

21. Sections 5144 and 5199 of the Cal/OSHA regulations do not vest Cal/OSHA with authority over CDCR's determinations about the number, placement, or duties of employees needed to manage CDCR's population of incarcerated persons.

22. Pursuant to Sections 5144 and 5199, CDCR independently developed and implemented its own RPPs. CDCR chose two types of NIOSH-approved, tight-fitting respirators for employee use: N-95 respirators for potential contact with patients with infectious respiratory diseases and work in isolation or quarantine areas; and MSA Advantage 1000 respirators (a full-face gas mask equipped with a chemical cartridge) to respond to incidents where mace, pepper spray, or tear gas may be used. These incidents may be classified as code 1, 2, or 3, and the code level dictates which employees are called to respond.

23. In addition to choosing the specific respirators its employees would be required to use, CDCR was responsible for identifying what workplace hazards exist and determining which employees may be exposed to those hazards. CDCR, not Cal/OSHA, decided that nearly all CDCR peace officers must wear tight-fitting respirators.

**CDCR's Facial Hair Policies and Practices**

24. When an employer determines that its employees should wear tight-fitting respirators, California law generally requires that facial hair not "interfere" with the "valve functions" of those respirators. Cal. Code Regs. tit. 8, § 5144(g)(1)(A).

25. Prior to September 22, 2022, CDCR's facial hair policy for correctional peace officers permitted officers to maintain neatly trimmed beards, not more than one inch long, for religious or medical

5

purposes. Department Operations Manual (hereinafter "DOM"), Section 33020.6.1(a)(2)(A)(3).

26. Prior to September 2022, the Charging Parties successfully performed all required peace officer duties while wearing beards in conformance with their religious beliefs.

27. On September 22, 2022, CDCR issued a statewide memorandum ("September 2022 Memo") notifying employees of revisions to the facial hair policy, which CDCR stated were made to "come into full compliance with CCR Title 8, Section 5144, Respiratory Protection and Section 5199, Aerosol Transmissible Diseases."

28. The September 2022 Memo provided notice that staff required by CDCR to wear respirators, which includes nearly all peace officers, would be prohibited from having "facial hair that comes between the sealing surface of the respirator and the face or facial hair that may interfere with valve function."

29. The September 2022 Memo also advised that effective December 5, 2022, previously approved religious accommodations to the facial hair policy would be re-evaluated, that affected employees would need to renew their religious accommodation requests by December 4, 2022, and that if religious accommodation requests were denied, staff were to be clean-shaven before reporting to their next shift or face disciplinary action.

30. On December 1, 2022, CDCR extended the date for employees to comply with the revised facial hair policy, making religious accommodation requests due by December 12, 2022, and, if denied, requiring officers to come into compliance with the policy by February 1, 2023.

31. CDCR issued the revised formal policy on December 12, 2022, prohibiting employees required to wear tight-fitting respirators from having beards "between the sealing surface of the face piece and the face or that interferes with the valve function." DOM Number 31020.9(d).

32. And, on January 17, 2023, CDCR revised its "Correctional and Peace Officer Grooming Standards," DOM 33020.6, to require nearly all peace officers to comply with the prohibition on beards contained in revised DOM 31020.9.

33. Only those peace officers working as Parole Agents, Special Agents, or in the Office of Correctional Safety were exempted from the revised facial hair policy and are permitted to keep their beards "clean and neatly groomed." DOM 33020.6.

6

COMPLAINT

34. After the September 2022 Memo, each of the Charging Parties submitted religious accommodation requests seeking to wear beards based on their sincerely held religious beliefs.

35. Beginning on or about February 1, 2023, CDCR has denied or refused to act on religious accommodation requests sought by the Charging Parties, whose religious beliefs require them to wear beards.

**Charging Parties**

<u>Mubashar Ali</u>

36. Charging Party Mubashar Ali, a practicing Muslim, has been employed as a CDCR peace officer since November 2017.  CDCR has applied the September 2022 Memo to Ali's peace officer position.

37. Since February 28, 2018, Ali has worked at the California Health Care Facility in Stockton, California ("CHCF").

38. Ali believes that the Sahih Bukhari, a Muslim book of teachings of Muslim Prophet Muhammad, require him to maintain a well-groomed beard.

39. At CHCF, Ali works in the Medical Guarded Unit ("MGU"), where officers escort inmates to and from the hospital and medical appointments.

40. Gas masks are not available in the MGU because use of chemical agents is not permitted in that area of CHCF.

41. There are peace officer assignments at CHCF, such as assignments in the weapons center, control booth, or gate house, or light duty positions, where officers are not required to respond to incidents that require a gas mask.

42. CHCF managers are also able to select which officers are staffed on response teams where respirators may be used.

43. On March 1, 2019, Ali requested a religious accommodation to permit him to wear a beard. While CDCR did not formally respond to this request for several years, it permitted him to wear a beard.  On October 17, 2022, however, Associate Warden Robert Thomas informed Ali that his March 1, 2019, religious accommodation request had been denied and instructed Ali to submit a new request based on CDCR's new clean-shaven policy.

7

44. On November 9, 2022, Ali submitted a second request for a religious accommodation to wear a well-groomed, short beard, which CDCR denied on April 7, 2023. In its denial, CDCR stated that "after a diligent search and reasonable effort" CDCR had been unable to identify a reasonable accommodation that would not create an undue hardship, and that no alternative respirator had been identified. The denial letter did not identify or explain to Ali what efforts CDCR took to identify alternative accommodations. The only option CDCR presented was for Ali to find and apply for non-peace officer positions, which he understood would be a demotion offering less pay and decreased retirement benefits.

45. On February 10, 2023, when Ali reported to CHCF with a short beard (of less than one inch), supervisors at the Reception Center refused to let Ali work, sent him home and told him not to return until he shaved.

46. To keep his job and provide for his family, Ali began shaving his beard after this incident and continues to shave under duress.

47. Ali's sincerely held religious beliefs require him to have a beard to participate in Eid al-Adha, one of Islam's two major holidays. Compliance with CDCR's clean-shaven policy will either prevent Ali from participating in Eid al-Adha, which requires that Muslims refrain from cutting their hair or nails in the ten days leading up to the holiday events, or require him to take 10 days of personal leave to refrain from shaving during this period.

48. The emotional toll of dishonoring his religion through shaving makes Ali feel that CDCR has taken away his identity. Ali has felt heartbroken and has cried at work because he doesn't feel like himself.

49. Ali's hair grows quickly which forces him to shave every two days. He has very thick hair and a skin condition that make shaving difficult and painful. Specifically, Ali's skin condition causes him to suffer significant cuts every time he shaves. Because Ali works in a medical facility, the open wounds resulting from shaving create a high risk of contracting a disease because inmates throw feces, blood, and other contaminants at officers. On two occasions inmates have thrown bodily fluids at Ali, who, as a result, maintains serious concerns about attending work with open wounds from shaving.

1

2          <u>Ravinder Dhaliwal</u>

3     50.   Charging Party Ravinder Dhaliwal began working as a peace officer at the Wasco State Prison

4           Reception Center ("WSP") in February 2017. He is assigned to D Yard and D Dorm, an open-

5           setting dormitory where inmates are not confined to cells. CDCR has applied the September

6           2022 Memo to Dhaliwal's peace officer position.

7     51.   Dhaliwal is a practicing Sikh who believes that the Guru Granth Sahib, the holy scripture of

8           Sikhism, and 10th Guru Goban Singh, require Sikh men to wear beards because Sikhs are never

9           to alter the way that God made them.

10    52.   Since early 2023, N-95s are no longer required or available in the inmate housing unit where

11          Dhaliwal is assigned.

12    53.   On April 20, 2022, Dhaliwal requested a religious accommodation to maintain a beard consistent

13          with his Sikh faith. CDCR granted the request in June 2022.

14    54.   Based on the September 2022 Memo, Dhaliwal re-submitted his religious accommodation

15          request for re-evaluation. On October 20, 2022, Dhaliwal submitted a second religious

16          accommodation. Dhaliwal has still not received a formal response on renewed religious

17          accommodation requests submitted on May 23 and October 5, 2023.

18    55.   In early November 2022, however, WSP EEO Administrator Daranee Aviles gave Dhaliwal a

19          verbal ultimatum to forego his religious accommodation request or find and apply for non-peace

20          officer positions, a demotion.

21    56.   Non-custody positions have lower pay, diminished retirement pay and benefits, fewer to no

22          options for overtime and decreased opportunities for promotion than peace officer positions.

23    57.   To keep his job and provide for his family, Dhaliwal began shaving and continues to shave under

24          duress.

25    58.   Being forced to shave to keep his job has caused stress, guilt, anger, depression, anxiety, and

26          isolation for Dhaliwal. As a result, in the past year, he has gained almost forty pounds, been

27          prescribed a daily medication for weight management, and told by his doctor that he should take

28          anxiety medication.

9

59. CDCR's current clean-shaven policy has stopped Dhaliwal from attending Sunday services because of the shame he feels and the pressure he receives from "uncles" (older, male Sikhs) at the Gurdwara (Sikh house of worship) to grow his beard. Now, Dhaliwal only visits the Gurdwara at times when fewer people are likely to be present.

60. Dhaliwal stopped attending Sikh weddings because priests stress the importance of adherence to the faith and uniformity in appearance by all in attendance, and being the only person without a beard was depressing and humiliating.

Jatinder Dhillon

61. Charging Party Jatinder Dhillon has been employed by CDCR since 2011. He started as a nurse, became a medical technical assistant in 2012, and, in 2020, became an officer at Folsom State Prison ("FSP"). He is assigned to inmate housing unit 3. CDCR has applied the September 2022 Memo to Dhillon's peace officer position.

62. Dhillon is a practicing Sikh who believes not shaving is one of the five articles of Sikhism and that scripture teaches Sikhs to not cut their hair because it is a living thing. He believes that growing his beard allows him to live in harmony with the divine God.

63. On January 31, 2023, Associate Warden Justi Caraballo advised Dhillon that all peace officers had to be clean-shaven starting the next day. Dhillon explained that he did not intend to shave because of a pending accommodation request. Caraballo told Dhillon that he would not be allowed to work with a beard, would have to use personal leave for any workdays he was not clean-shaven, and then removed Dhillon from the schedule for several days.

64. To keep his job and support his family, on February 4, 2023, Dhillon shaved, and continues to shave under duress.

65. For years prior to February 4, 2023, Dhillon successfully performed his peace officer duties while wearing a beard.

66. On June 1, 2023, Dhillon submitted a religious accommodation request through his attorneys, and is still awaiting a response from CDCR.

67. Being forced to shave to keep his job has altered Dhillon's self-image, and caused anxiety, sleeplessness, and feelings of isolation.

10

68.    Due to the shame and embarrassment compliance with CDCR's current clean-shaven policy has caused, Dhillon stopped attending weekly services at the Gurdwara. He now goes to the Gurdwara approximately once a month and only at times when there are likely to be few people present.

Amarpreet Pannu

69.    Charging Party Amarpreet Pannu began his employment with CDCR as a peace officer trainee in May 2018, and has worked as an officer at High Desert State Prison ("HSP") since August 2018. He works as a Coverage Relief Officer at HSP who, at each shift, is assigned to work any post where coverage is needed. CDCR has applied the September 2022 Memo to Pannu's peace officer position.

70.    As a Sikh, Pannu adheres to the practice of Kesh, or allowing one's hair to grow.  Pannu wore a beard up to one inch in length to work for many years before CDCR began enforcing its clean-shaven policy.

71.    On January 31, 2023, Pannu requested a religious accommodation to CDCR's clean-shaven policy and attached documentation describing the Sikh religious practice of Kesh.

72.    On February 1, 2023, a CDCR supervisor sent Pannu home on eight hours of unpaid leave for failing to shave his beard. Pannu received a "training letter," a disciplinary action, for having a beard and was told that he must report to work clean-shaven or he would be sent home again, disciplined, and ultimately terminated.

73.    In its February 10, 2023, denial of Pannu's accommodation request, CDCR stated that "after a diligent search and reasonable effort" CDCR had been unable to identify a reasonable accommodation that would not create an undue hardship, and that no alternative respirator had been identified. The denial letter did not identify or explain to Pannu what efforts CDCR took to identify alternative accommodations. The only option CDCR presented was for Pannu to find and apply for another position, which he understood would be a demotion.

74.    To keep his job and provide for his family, Pannu began shaving and continues to shave under duress.

11

75. On February 14, 2023, Pannu sent a memorandum to HSP Warden Rob St. Andre noting that he was complying under duress with the CDCR's mandate to be clean-shaven because to do so violated his Sikh faith. The next day, Warden St. Andre responded that CDCR had "not changed its policy, [but] was only enforcing the policy as stated in Title 8, which is law." Warden St. Andre also referred Pannu back to the February 10, 2023, denial letter and invited Pannu to contact an Assistant EEO Coordinator with further questions.

76. Pannu's attorneys renewed his religious accommodation request on June 1, 2023. CDCR has not yet responded.

77. Compliance with CDCR's clean-shaven policy has caused Pannu shame and embarrassment with family and friends and made him irritable and depressed. Pannu does not attend family events and is distressed that after performing his job well, CDCR is holding his religion against him.

Adam Quattrone

78. Charging Party Adam Quattrone began his employment with CDCR in March 2016. He works in the control booth of the Restricted Housing Unit at the Substance Abuse Treatment Facility in Corcoran, California. CDCR has applied the September 2022 Memo to Quattrone's peace officer position.

79. Quattrone is a practicing Odinist who has sincerely held religious beliefs that a prominent beard is an indicator of masculinity, character, and good name. Odinism is an ancient religion that originated in Northern Europe and involves the worship of Norse gods, such as Thor and chief god Odin.

80. Quattrone wore a beard to work for many years before CDCR began enforcing its clean-shaven policy.

81. Quattrone has never had to wear a gas-mask-type respirator as part of his job duties. He is not permitted to leave the control booth for any reason while on duty, and therefore does not respond to code incidents.

82. On September 23, 2022, Quattrone requested a religious accommodation to maintain a "neat, conservative beard of no more than two inches" to bring himself "closer to God and into his favor."

12

COMPLAINT

83.     CDCR denied Quattrone's request to wear a beard on May 1, 2023. CDCR told Quattrone that it had been unable to identify a reasonable accommodation that would not create an undue hardship, and that no alternative respirator had been identified. No explanation was given to Quattrone on what efforts CDCR took to identify alternative accommodations.

84.     On February 3, 2023, a CDCR supervisor sent Quattrone home on unpaid leave for failing to shave his beard. The next day, he shaved enough facial hair to comply with CDCR's clean-shaven policy.

85.     To keep his job and provide for his family, Quattrone continues to shave under duress.

86.     Being forced to shave to keep his job has made Quattrone feel like he has fallen out of favor with his religion and resulted in insomnia. It has also caused him to constantly fear discipline, feel isolated from his religious community, and to suffer humiliation and teasing at work.

Rajdeep Singh

87.     Charging Party Rajdeep Singh began his employment with CDCR as a trainee in July 2021. He was promoted to an officer position at the California State Prison ("CSP") in Sacramento, California in October 2021. He is a healthcare access officer assigned to escort inmates to the clinic from other CSP buildings. CDCR has applied the September 2022 Memo to R. Singh's peace officer position.

88.     Rajdeep Singh is a practicing Sikh who believes he is called by God and community to wear a beard, and that Sikh scriptures teach that hair equalizes all Sikhs and honors the perfection of God's creation.

89.     Rajdeep Singh wore a beard up to one inch in length to work for many years before CDCR began enforcing its clean-shaven policy.

90.     In June 2022, Rajdeep Singh requested a religious accommodation to maintain his beard. After the September 2022 Memo, Rajdeep Singh re-submitted his religious accommodation request.

91.     In its September 8, 2023, denial of Rajdeep Singh's religious accommodation, CDCR stated that "after a diligent search and reasonable effort" CDCR had been unable to identify a reasonable accommodation that would not create an undue hardship, and that no alternative respirator had been identified. The denial letter did not identify or explain to Rajdeep Singh what efforts CDCR

COMPLAINT

took to identify alternative accommodations. The only option CDCR presented was for Rajdeep Singh to find and apply for another position, which he understood would be a demotion.

92. When Rajdeep Singh reported to work on February 1, 2023, a CDCR supervisor sent him home for failing to shave his beard and indicated that he must be clean-shaven to return to work or face discipline.

93. Rajdeep Singh's supervisors and co-workers often joke about his request to wear a beard in observance of his faith. The jokes are embarrassing and create anxiety for him. The jokes also cause him to feel isolated and like he is experiencing college-style hazing.

94. To keep his job and provide for his family, Rajdeep Singh began shaving and continues to shave under duress.

95. Being forced to shave humiliates and makes Rajdeep Singh feel like an outcast at his Gurdwara.

96. In March and August 2023, Rajdeep Singh was supposed to be a groomsman in the weddings of two of his family members. He could not participate because the Granthi (Sikh priests) require everyone in wedding parties to present equally in appearance.

97. Because of the stress of being forced to shave to adhere to CDCR's clean-shaven policy, in April 2023, Rajdeep Singh began having difficulty sleeping and has been prescribed a CPAP to address his sleep issues.

Satvir Singh[1]

98. Charging Party Satvir Singh began his employment with CDCR in March 2022 at the California State Prison ("CSP") in Sacramento, California and was assigned to B Yard. CDCR has applied the September 2022 Memo to S. Singh's peace officer position.

99. Satvir Singh is a practicing Sikh who believes that growing his beard allows him to live in harmony with the will of God.

100. Until being required to shave to adhere to CDCR's clean-shaven policy, Satvir Singh had worn a

---

[1] Satvir Singh worked as a peace officer at the California State Prison in Sacramento, California from March 2022 until August 4, 2023, when he was placed on paid administrative leave for reasons unrelated to this matter. He is currently appealing his October 20, 2023, termination with the California State Personnel Board and thus faces the possibility of future harm from again having to shave under duress. For purposes of this Complaint, unless otherwise stated, all references to Satvir Singh or his inclusion in statements relating to the Charging Parties as a whole refer to the time period from the start of his employment to August 4, 2023.

14

COMPLAINT

beard since his teenage years.

101.    Satvir Singh wore a beard up to one inch in length to work before CDCR began enforcing its clean-shaven policy.

102.    Satvir Singh sought a religious accommodation to CDCR's clean-shaven policy on three separate occasions – December 8, 2022, and February 7 and June 1, 2023.

103.    While CDCR has not provided an official response to Satvir Singh's religious accommodation requests, in early February 2023, a sergeant called S. Singh into the office and told him that it was a requirement that he shave, and that if Satvir Singh failed to do so he would have to take a demotion to a non-custody position.

104.    To keep his job and provide for his family, Satvir Singh shaved under duress for the remainder of his employment with CDCR.

105.    Being forced to shave to comply with CDCR's policy caused Satvir Singh to gain ten to fifteen pounds and to become isolated from family and friends, stressed, and depressed.

Manroop Singh Sohal

106.    In 2019, Charging Party Manroop Singh Sohal began his employment with CDCR as a correctional officer at the Salinas Valley State Prison, and transferred to the California Health Care Facility ("CHCF") in Stockton, California in October 2022. He is a building officer who works in a maximum-security unit. CDCR has applied the September 2022 Memo to Sohal's peace officer position.

107.    Sohal is a practicing Sikh who believes that growing his beard naturally is required to respect God and creation.

108.    Sohal wore a beard to work for many years before CDCR began enforcing its clean-shaven policy.

109.    In November 2022, Sohal submitted a request for religious accommodation that CDCR denied. In  addressing CDCR's denial with Sohal, Associate Warden Miguel Divero informed Sohal that the only accommodation available was for Sohal to find and apply for another position, which he understood would be a demotion.

110.    To keep his job and provide for his family, Sohal shaved, and continues to shave under duress.

15

111.   Being forced to shave to comply with CDCR's clean-shaven policy caused Sohal to lose weight and suffer insomnia, anxiety, stress, humiliation, and embarrassment. Now, he often skips family events and only goes to the Gurdwara at times when there are fewer people.

**CDCR's Failure to Adequately Engage in the Interactive Process and Meet Its Title VII Obligations to Reasonably Accommodate Employees' Religious Beliefs**

112.   To comply with CDCR's clean-shaven policy, the Charging Parties and similarly situated peace officers continue to shave their beards in contravention of their sincerely held religious beliefs.

113.   CDCR has either denied or failed to respond to the Charging Parties' requests for religious accommodation to CDCR's clean-shaven policy and has refused to accommodate the Charging Parties' religious practices.

114.   CDCR has claimed that it denied the Charging Parties' requests for religious accommodations because correctional officers' ability to wear a tight-fitting respirator is an essential job function necessary to ensure their safety for nearly every officer. CDCR also maintains that applicable regulations prohibit the officers from wearing facial hair with the tight-fitting N-95 and A1000 respirators required by CDCR.

115.   Upon information and belief, there are secured areas within each CDCR institution where peace officers assigned to those locations are not permitted to leave their post even in the event of a security incident.

116.   Upon information and belief, CDCR has not adequately evaluated whether the ability to wear a tight-fitting respirator is necessary to perform the essential job functions of every peace officer assignment, including but not limited to, assignments in areas where chemical agents are not permitted, control booths, weapons centers, gates, and light duty positions.

117.   Upon information and belief, there are other correctional institutions that have tailored their respiratory protection programs and have structured their staffing and incident response to accommodate officers' religious beliefs while meeting safety requirements.

118.   From approximately April 2020 to February 2023, CDCR's policy on face coverings for prison staff required all personnel to wear N-95 masks to combat the spread of COVID-19. Throughout the pandemic, the Charging Parties wore beards under their N-95 masks.

16

COMPLAINT

119.   As of February 16, 2023, CDCR no longer required staff and inmates to wear N-95 masks at all times.

120.   In declining officers' religious accommodations requests to CDCR's clean-shaven policy, CDCR indicated that the only option available to address Charging Parties' religious conflicts was for the Charging Parties to find and apply for another position, all of which the Charging Parties understood would function as a demotion from their peace officer positions.

121.   CDCR has never affirmatively offered a specific, available position as an accommodation to any of the Charging Parties.

122.   Similarly, although positions as Parole Agents, Special Agents, or in the Office of Correctional Safety are exempted from CDCR's revised facial hair policy, CDCR never discussed or offered any of these positions to the Charging Parties to accommodate their religious beliefs.

123.   Additionally, on several occasions between March 30 and June 1, 2023, Charging Parties' counsel provided CDCR a three-page list of alternative respirators to tight-fitting masks with descriptions and informational links for each alternative.  The list identified eight alternative respirators as well as their manufacturers and recommended that the manufacturers (six in total) be contacted because all offer options to configure the respirators listed to the needs of the employer.

124.   Upon information and belief, CDCR has not contacted the respirator manufacturers identified by the Charging Parties to ascertain the availability of respirators that would address both CDCR's safety concerns and the Charging Parties' religious needs.

125.   CDCR has not adequately assessed all available PAPRs or other alternative accommodations.

## CLAIM – IRREPARABLE HARM ABSENT PRELIMINARY RELIEF

126.   The Charging Parties allege that CDCR has discriminated against them on the basis of religion in violation of Title VII, 42 U.S.C. § 2000e(a)(2), by:

a.   Failing to provide a religious accommodation;

b.   failing to adequately engage in the interactive process with the Charging Parties, including by failing to make good faith efforts to consider whether alternative accommodations will eliminate the conflict between the Charging Parties' religious beliefs and CDCR's clean-

COMPLAINT

1    shaven policy; and

2    c.   failing to demonstrate that implementing the alternative accommodations proposed by the

3         Charging Parties would pose an undue hardship.

4    127.   Each of the Charging Parties and similarly situated CDCR peace officers have and continue to

5          suffer extreme emotional injury as a direct and proximate result of CDCR's enforcement of its

6          clean-shaven policy and denial of their religious accommodation requests. The injury suffered by

7          the Charging Parties and similarly situated officers include, but are not limited to, mental

8          anguish, stress, anxiety, depression, fear, loss of identity, humiliation, embarrassment, social

9          isolation and withdrawal, insomnia, weight loss or weight gain and other physical symptoms;

10         and mental anguish when going to and/or at work.

11   128.   Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC is actively engaged in

12         investigating the charges filed by the Charging Parties.

13   129.   Preliminary injunctive relief pursuant to Section 706(f)(2) of Title VII, 42 U.S.C. § 2000e-

14         5(f)(2), is necessary because there is no adequate legal remedy to address the continuing harm to

15         the Charging Parties and similarly situated CDCR peace officers from having to shave in

16         violation of their sincerely held religious beliefs to keep their jobs.

17   **<u>PRAYER FOR RELIEF</u>**

18   For the foregoing reasons, the United States respectfully requests that this Court enter a

19   Preliminary Relief Order against CDCR:

20   1.   Enjoining CDCR from statewide enforcement of its policies prohibiting facial hair for peace

21        officers whose sincerely held religious beliefs require them to wear beards;

22   2.   Ordering CDCR to:

23        a.   Immediately communicate to all CDCR personnel that no peace officer who requests

24             to wear a beard due to sincerely held religious beliefs may be disciplined, threatened

25             with discipline, demoted, involuntarily reclassified or transferred, prohibited from

26             working, required to use accrued time off, terminated, or retaliated against for not

27             being clean-shaven, for the duration of this Preliminary Relief Order;

28

18

COMPLAINT

    b.   Until the Preliminary Relief Order is lifted by this Court, eliminate the conflict between correctional peace officers' sincerely held religious beliefs requiring them to wear beards and CDCR's peace officer job requirements, whether by granting them paid leave, requiring them to work in other positions while receiving their current or prior peace officer rate of pay, or via other alternatives that do not financially disadvantage peace officers; and

    c.   Comply with its obligations under Title VII by engaging in good faith discussions with CDCR peace officers Mubashar Ali, Ravinder Dhaliwal, Jatinder Dhillon, Amarpreet Pannu, Adam Quattrone, Rajdeep Singh, Satvir Singh, and Manroop Sohal (collectively, "the Charging Parties), and any similarly situated peace officers whose sincerely held religious beliefs require them to wear beards, regarding CDCR's clean-shaven policy to determine if there are alternative accommodations that would eliminate the conflict between the officers' religious beliefs and the clean-shaven policy by evaluating every potential accommodation proposed by a peace officer or the United States, including, but not limited to: (i) providing alternative respirators; (ii) narrowly tailoring CDCR's respiratory protection program to align respirator requirements and officer duties and assignments in a manner that accommodates employees whose religious beliefs require them to wear a beard; or (iii) offering transfers to specific positions within CDCR that maintains the peace officer rate of pay and benefits.

3.   Maintaining jurisdiction over this matter until the earlier of: (a) the EEOC completing its statutorily mandated investigation and issuing a final disposition of the charges of discrimination filed by the Charging Parties, or (b) CDCR fulfilling its obligation to participate in a good faith interactive process by evaluating potential accommodations proposed by the United States or an officer, or demonstrating to this Court that undue hardship would be created by all potential accommodations identified by a peace officer and the United States; and

COMPLAINT

1      4.   Granting any further relief as is just and proper under the circumstances.

2

3

4    Dated: March 25, 2024                    Respectfully submitted,

5

6    PHILLIP A. TALBERT                       KRISTEN CLARKE
     United States Attorney                   Assistant Attorney General
7    Eastern District of California           Civil Rights Division

8

9    */s/ Robert A. Fuentes*                  */s/ Alicia D. Johnson*
     ROBERT A. FUENTES                        KAREN WOODARD
10   Assistant United States Attorney         Chief
     Robert.Fuentes@usdoj.gov                 VALERIE L. MEYER
11                                            Deputy Chief
                                              ALICIA D. JOHNSON (DCRN 494032)
12                                            SHARION SCOTT (DCRN 1617438)
                                              Trial Attorneys
13                                            U.S. Department of Justice
                                              Civil Rights Division
14                                            Employment Litigation Section
                                              150 M Street, N.E., 9th Floor
15                                            Washington, DC 20530
                                              Alicia.Johnson@usdoj.gov
16                                            Sharion.Scott@usdoj.gov
17

18                                            Attorneys for Applicant
                                              United States of America
19

20

21

22

23

24

25

26

27

28

COMPLAINT