ROB BONTA, State Bar No. 202668
Attorney General of California
FIEL D. TIGNO, State Bar No. 161195
KELSEY LINNETT, State Bar No. 274547
Supervising Deputy Attorneys General
JOSHUA C. IRWIN, State Bar No. 209437
 1515 Clay Street, 20th Floor
 P.O. Box 70550
 Oakland, CA 94612-0550
 Telephone: (510) 879-0986
 Fax: (510) 622-2270
 E-mail: Kelsey.Linnett@doj.ca.gov
*Attorneys for Respondent
California Department of Corrections and
Rehabilitation*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>            Applicant,<br><br>     v.<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,**<br><br>            Respondent. | 2:24-cv-00925-DJC-DB<br><br>**REPLY TO UNITED STATES' RESPONSE TO CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION'S OBJECTIONS TO EXPERTS**<br><br>Date:             June 6, 2024<br>Time:            1:30 pm<br>Courtroom:   10<br>Judge:           Daniel J. Calabretta<br>Trial Date:<br>Action Filed:  March 25, 2024 |

## INTRODUCTION

The United States admits in its Response to the California Department of Corrections and Rehabilitation's ("CDCR") Objections to Experts Treadway and Shane that those experts were hired *after* CDCR filed its Opposition brief. The United States' claim that those experts did not provide new evidence in the Reply brief is disingenuous at best, because Treadway and Shane were admittedly retained to provide evidence about other correctional systems used by other jurisdictions (e.g., the Federal Bureau of Prisons and New Mexico) to argue that CDCR should

1

entirely restructure its operations to follow those models.  Treadway and Shane proposed an entirely new idea that CDCR should create a two-tiered correctional officer ("CO") classification, where one tier would be composed of correctional officers who would be posted throughout CDCR institutions and able to don tight-fitting respirators to respond to inmate disturbances and other hazardous duties, while the other tier would be composed of bearded COs who would not interact with inmates or perform hazardous duties as a religious accommodation.  This new proposal is a different theory of liability against CDCR from the initial theory that the United States had raised in its Application for Preliminary Injunction, which was that the CDCR should accommodate bearded COs within CDCR's *current* operations.  The United States' use of newly hired experts to introduce new evidence and ideas in a Reply brief is wholly improper, and the Court should sustain CDCR's objections to the expert declarations.

## LEGAL ARGUMENT

I. **THE UNITED STATES RAISED A NEW THEORY OF LIABILITY AGAINST CDCR IN ITS REPLY BRIEF AND RETAINED NEW EXPERTS TREADWAY AND SHANE TO OPINE THAT CDCR SHOULD RESTRUCTURE ITS ENTIRE OPERATIONS BECAUSE THE UNITED STATES REALIZED THAT ITS INITIAL THEORY WAS BASED ON INACCURATE INFORMATION AND UNSUPPORTED BY ANY EVIDENCE**

A party seeking preliminary injunction cannot raise a new theory of the case against the defendant with new evidence in a reply brief after the defendant's opposition brief attacks the sufficiency of the preliminary injunction application.  *Semper/Exeter Paper Co. LLC v. Henderson Specialty Paper LLC*, No. SACV090672AGMLGX, 2009 WL 10670619, at *2-3 (C.D. Cal. Sept. 21, 2009).  "If Defendants' attacks disprove part of Plaintiff's case, Plaintiff should not be allowed to make a different case with different evidence in reply."  *Ibid.*

This is precisely what the United States did in admittedly retaining experts Treadway and Shane *after* CDCR had filed its Opposition brief and evidence. (See United States' Response to CDCR's Objections to Experts ["Resp. to Obj."] at p. 4 ["the United States contacted and retained Treadway and Shane only after CDCR filed its Opposition . . ."].)  Although the United States claims that Treadway and Shane were only retained to "elaborate with specificity" on the United States' initial theory of Title VII liability against CDCR, a comparison of the proposed accommodation options the United States raised in its Application for Preliminary Injunction with

the accommodation proposal in its Reply brief demonstrates that the United States' theory of liability had significantly changed.  Namely, the United States' initial theory was that the CDCR could easily accommodate the religious needs of bearded COs within the CDCR's existing operations by assigning them to posts where there were no exposure to chemical agents and disease, or by exempting bearded COs on a "case-by-case basis" from performing duties that would require the use of respirators.  (Application Memorandum of Points and Authorities ["App. Memo."] at pp. 18-19].)  The United States also argued that CDCR had not properly considered loose-fitting Powered Air Purifying Respirators ("PAPRs") as an alternative to respirators, but did not suggest hose-less PAPRs or any particular respirator model that could be used safely by COs performing their essential functions.  (App. Memo. At pp. 19-20.)

However, after CDCR submitted its Opposition brief with substantial evidence establishing that CDCR's current operations require *all* its COs to perform peace-officer duties that mandate the use of respirators and that there are no posts where respirators are unnecessary, the United States realized that its Title VII case against CDCR was based on either incorrect information or mistaken assumptions.  The United States then pivoted to retaining correctional experts Treadway and Shane who could present a new theory of liability against CDCR: that CDCR should revamp its operations to follow the two-tiered correctional model allegedly used by other prison systems such as the Federal Bureau of Prisons and New Mexico.  This is an entirely new idea, and not merely an "elaboration with specificity" of the United States' original case, because neither the United States nor CDCR had even raised the topic of different correctional models in their briefing.  The United States' original case against CDCR was based on CDCR's alleged failure to accommodate bearded employees who adhered to religious beliefs *under the CDCR's existing CO classifications and correctional operations*.  The Treadway and Shane declarations present entirely new evidence and a different theory of liability because they advocate that CDCR should follow other correctional systems and create a "special team" of COs who would perform the hazardous duties of responding to inmate disturbances and supervising inmates during infectious outbreaks, while bearded COs with religious accommodations would be permanently assigned to "no inmate contact" posts. (Treadway Decl. at ¶¶ 10-11; 16-19; Shane Decl. at ¶¶ 7-8; 11-15.)

3

CDCR's Reply to Response to Objections to Evidence  (2:24-cv-00925-DJC-DB)

Treadway also presented new evidence regarding specific hose-less PAPR models that were not mentioned in the United States' Application for Preliminary Injunction, which deprived CDCR of the opportunity to rebut this evidence in its Opposition brief.  (Treadway Decl. at ¶¶ 39-42.)

The United States' Response to CDCR's Objections shows that Treadway and Shane were retained to provide a new case against CDCR based on the idea that CDCR should entirely revamp its CO classification and operations to create a two-tiered system of COs that would conform with other correctional systems.  The United States admits in its specific responses to CDCR objections to the Treadway and Shane declarations that it is irrelevant whether CDCR has "no inmate contact" posts because those "**positions could be created**."  (Resp. to Obj. Appendix at pp. 1-2, Resp. to Obj. #1 and #2 [emphasis added].)  The United States also states that it is immaterial that Treadway and Shane have no knowledge of CDCR's current system of assigning posts because the experts were retained to "explain why CDCR must fully evaluate **changing its current staffing arrangements**."  (Resp. to Obj. Appendix at pp. 11, 14, Resp. to Obj. #11 and #14 [emphasis added].)  Thus, it is clear from the United States' responses to CDCR's objections that the Treadway and Shane declarations are not merely "elaborations" on the original case set forth in the Application for Preliminary Injunction but are, in fact, new evidence submitted to establish an eleventh-hour new theory of liability against CDCR in the United States' Reply.  This is inappropriate, and the Court should exclude the Treadway and Shane declarations from evidence.

II. **THE TREADWAY AND SHANE DECLARATIONS ARE ALSO BASED ON INCORRECT ASSUMPTIONS ABOUT CDCR'S OPERATIONS AND SHOULD BE EXCLUDED FOR THOSE REASONS**

In addition, to the extent Treadway and Shane addressed CDCR's evidence about its operations in CDCR's Opposition brief, the experts 'declarations are improper because they either lack any foundation or their opinions are based on incorrect facts about CDCR's operations.  At a minimum, expert evidence must assist the Court to understand the evidence or to determine a factual issue, and the expert's testimony must be based on "sufficient facts and data," be the product of reliable principles and methods, and reflect a reliable application of the principles and

methods to the facts of the case. Fed. R. Evid. 702. Here, Treadway and Shane admit that they lack any personal knowledge or experience of CDCR's prisons, and, thus, their testimony regarding CDCR's accommodation options is inherently unreliable.

More importantly, the experts' opinions are based on incorrect assumptions about CDCR's operations at certain points, which the United States euphemistically describes as the experts "not need[ing] perfect information." (See e.g., Resp. to Obj. Appendix at pp. 3-10). For example, Treadway and Shane both erroneously assume that CDCR has CO "light duty" posts where COs have no inmate contact and are excused from responding to emergency inmate disturbances. (Treadway Decl. at ¶¶ 23-31 [discussing treating bearded COs like medically impaired COs by assigning them to mailroom tasks and "phone monitoring"]; Shane Decl. at ¶ 7 [discussing "no-inmate contact posts"].) But CDCR's evidence in its Opposition brief was clear that even COs in "light duty" posts are not excused from working around inmates or being assigned to duties where respirators are needed. (Lemon Decl. in Support of CDCR's Opposition to Application ["Lemon Oppos. Decl."] at ¶ 15.) The experts also assumed, incorrectly, that CDCR has regular CO posts that would not require inmate contact, such as working in munitions, control booths, or towers. (Treadway Decl. at ¶¶ 10-11, 13-14; Shane Decl. at ¶ 6.) But CDCR's Opposition evidence showed that there were no CO posts that permanently exempted COs from inmate contact or responding to inmate disturbances. (Lemon Oppos. Decl. at ¶ 13.) Irrespective of their regularly assigned post, COs could at any time be redirected or held over for a mandatory overtime shift to perform duties that may require inmate contact and or the use of respirators. Accordingly, because the Treadway and Shane declarations fail to satisfy the foundational and reliability requirements of the rules of evidence, those declarations should not be admitted.

## CONCLUSION

The United States retained Treadway and Shane to offer an entirely new case against CDCR in its Reply brief, which was that CDCR should revamp its CO classification and operations to create a new class of "no inmate contact" jobs for bearded COs who adhere to religious beliefs. The United States' tactic of raising a new theory of liability against CDCR supported by newly hired experts in its Reply is improper and should not be tolerated by this

Court.  CDCR respectfully requests that the Court sustain its objections and exclude the Treadway and Shane declarations.

Dated: June 4, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
FIEL TIGNO
Supervising Deputy Attorney General
KELSEY LINNETT
Supervising Deputy Attorney General


/s Joshua C. Irwin
JOSHUA C. IRWIN
Deputy Attorney General
*Attorneys for Respondent*
*California Department of Corrections and Rehabilitation*

OK2024900118

# CERTIFICATE OF SERVICE

Case Name:  **United States of America v. CDCR**        No.   **2:24-cv-00925-DJC-DB**

I hereby certify that on June 4, 2024, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**Reply to United States' Response to California Department of Corrections and Rehabilitation's Objections to Experts**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on June 4, 2024, at Oakland, California.

| Ida Martinac | |
|---|---|
| Declarant | Signature |

OK2024900118
91815512.docx